UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

| | | |
|---|---|---|
| MARK ALLAN McCALLUM,<br># 159269, | )<br>)<br>) | |
| Plaintiff, | )<br>) | Case No. 1:15-cv-700 |
| v. | )<br>) | Honorable Gordon J. Quist |
| CORIZON, INC., | )<br>) | **REPORT AND RECOMMENDATION** |
| Defendant. | )<br>)<br>) | |

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. Plaintiff is an inmate held in the custody of the Michigan Department of Corrections (MDOC) on his criminal convictions. He is currently an inmate at the Parnall Correctional Facility. Plaintiff named a corporation, Prison Health Services, as the defendant. (ECF No. 1, PageID.1). Inasmuch as the parties appear to agree that Corizon, Inc. is the correct name of the corporate defendant (*see* ECF No. 43, PageID.468; ECF No. 45, PageID.697), the caption of this case has been amended.

This lawsuit arises out of conditions of plaintiff's confinement in the custody of the MDOC between May 6, 2013, the date when a doctor at MDOC's Duane Waters Hospital "took" plaintiff's hernia belt, and April 2, 2015, the date of plaintiff's surgery to repair an inguinal hernia. Plaintiff alleges that the Corizon Inc. (Corizon) was deliberately indifferent to his inguinal hernia in violation of his rights under the

Eighth Amendment's Cruel and Unusual Punishments Clause [1] Plaintiff seeks an award of damages. (ECF No. 1, PageID.4).

The matter is before the Court on defendant's motion for summary judgment. (ECF No. 43). Plaintiff opposes defendant's motion. (ECF No. 45-49, 51, ECF No. 53 at PageID.808-09, ECF No. 54, 55, 63, 68, 72, 74). For the reasons set forth herein, I recommend that defendant's motion for summary judgment be granted and that judgment be entered in defendant's favor on all plaintiff's claims.

## Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *McKay v. Federspiel*, 823 F.3d 862, 866 (6th Cir. 2016). The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Rocheleau v. Elder Living Const., LLC*, 814 F.3d 398, 400 (6th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The Court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *France v. Lucas*, 836 F.3d 612, 624 (6th Cir. 2016).

---

[1] All other claims have been dismissed. (*See* ECF No. 4, 5).

When the party without the burden of proof seeks summary judgment, that party bears the initial burden of pointing out to the district court an absence of evidence to support the nonmoving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings. *See Ellington v. City of E. Cleveland*, 689 F.3d 549, 552 (6th Cir. 2012); *see also Scadden v. Warner*, No. 16-1876, __ F. App'x __, 2017 WL 384874, at *4 (6th Cir. Jan. 27, 2017). The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1990); *see Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 533 (6th Cir. 2012). "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [non-movant].'" *Dominguez v. Correctional Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Anderson*, 477 U.S. at 252); *see Brown v. Battle Creek Police Dep't*, 844 F.3d 556, 565 (6th Cir. 2016).

## Preliminary Matters

A.    Dr. Bomber's Declaration

Plaintiff objects to Dr. Bomber's declaration (ECF No. 19-2), which defendant filed in support of the motion for summary judgment that the Court dismissed on March 1, 2017. (ECF No. 46, PageID.736-37; ECF No. 68, PageID.916-17; ECF No. 72, PageID.926). Plaintiff's objection is misplaced because the only declaration from Dr. Bomber that is significant for present purposes is his declaration filed in support of defendant's pending motion for summary judgment. (*See* ECF No. 43-1). Further, to the extent that plaintiff is arguing that the declaration filed in support of the pending motion should be disregarded because it fails to satisfy 28 U.S.C. § 1746, the argument is frivolous. Dr. Bomber's February 12, 2016, declaration is made under penalty of perjury, faithfully incorporates the statutory language that "the foregoing is true and correct," and is dated and signed by Dr. Bomber. (*Id.* at PageID.506).

Plaintiff's unsupported belief that Dr. Bomber is not a qualified medical expert and his disagreement with the doctor's medical opinions (*see* ECF No. 72) are not grounds for excluding the doctor's declaration. Dr. Bomber is a doctor of osteopathic medicine licensed to practice in the State of Michigan. (Bomber Decl. ¶ 2, ECF No. 43-1, PageID.492). He is qualified as an expert witness. *See, e.g.*, *Yeardon v. Wijayagunaratne*, No. 2:14-cv-178, 2015 WL 7769365, at *3-4 (W.D. Mich. Nov. 6, 2015).

Plaintiff's objections are overruled. Dr. Bomber's declaration (ECF No. 43-1) will be considered herein.

B.     Request that Defendant's Motion be Denied Under Rule 56(d)(1)

Plaintiff asks the Court to deny defendant's motion for summary judgment based on plaintiff's need for more discovery. All discovery in this case closed on December 22, 2015. (ECF No. 7, PageID.27). Plaintiff concedes that he never requested an extension of the discovery deadline. (ECF No. 46, PageID.722; ECF No. 68, PageID.902). Nonetheless, plaintiff argues that defendant's motion should be denied based on perceived inadequacies in defendant's responses to his discovery requests. (ECF No. 46, PageID.722-29; ECF No. 68, PageID.902-913). Plaintiff did not support his arguments with the affidavit or declaration required under Rule 56(d). *See* FED R. CIV. P. 56(d).

The Sixth Circuit's recent decision in *Scadden v. Werner*, No. 16-1876, __ F. App'x __, 2017 WL 384874 (6th Cir. Jan. 27, 2017) is instructive. The Court of Appeals noted that "Federal Rule of Civil Procedure 56(d) spells out how a non-movant should inform the court. The rule requires a nonmovant to show by affidavit or declaration that, 'for specified reasons, [he] cannot present facts essential to justify its opposition.' Then, 'the court *may*: (1) defer considering the motion or deny it; (2) allow time ... to take discovery; or (3) issue any other appropriate order.' " 2017 WL 384874, at *3 (quoting FED. R. CIV. P. 56(d)) (emphasis added). The Sixth Circuit reiterated that the "need to comply with Rule 56(d) 'cannot be overemphasized.' " 2017 WL 384874, at *3 (quoting *Cacevic v. City of Hazel Park*, 226 F.3d 483, 488 (6th Cir. 2000)). It noted that, without a Rule 56(d) affidavit or declaration or a motion that gives the district court a chance to rule on the need for additional discovery, an appellate court would

-5-

not normally address whether there was adequate time for discovery. 2017 WL 384874, at *3; *see also Unan v. Lyon*, 853 F.3d 279, 292 (6th Cir. 2017) ("We have observed that filing an affidavit that complies with Rule 56(d) is essential, and that in the absence of such a motion or affidavit, this court will not normally address whether there was adequate time for discovery.") (citation and quotation omitted).

In addition, "even when a party properly presents a Rule 56(d) affidavit and a motion to extend discovery, the rule only provides that a court 'may' extend the discovery deadline. Thus, [the Court of Appeals] reviews the decision 'under an abuse of discretion standard' and only reverse[s] if the decision denying further discovery was 'arbitrary, unjustifiable, or clearly unreasonable.'" *Scadden*, 2017 WL 384874, at *3 (quoting *F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 623–24 (6th Cir. 2014)). "In so reviewing, [the Sixth Circuit] look[s] to various factors but consider primarily whether the party seeking an extension was diligent in pursuing discovery." 2017 WL 384874, at *3 (citations and quotations omitted); *see also Katz v. Village of Beverly Hills*, No. 16-1574, __ F. App'x __, 2017 WL 360551, at *6 (6th Cir. Jan. 25, 2017). A non-moving party's "failure to comply with 56(d) is reason enough to conclude that the district court did not abuse its discretion in granting the initial summary judgment motion, or denying his request for reconsideration, without allowing for more discovery." *Scadden,* 2017 WL 384874, at *3.

Here, the Court entered its standard case management order on August 24, 2015, and discovery closed on December 22, 2015. 9ECF No. 7, PageID.27). The standard 120-day discovery period was more than sufficient. This case is much simpler

than most prisoner civil rights cases in that it involves one claim by one plaintiff against one defendant and a clearly defined time period, which began on April 13, 2013, when plaintiff was transferred into the MDOC's custody, and it ended on April 2, 2015, when plaintiff's left inguinal hernia was surgically repaired. Plaintiff did nothing during the first three months after entry of the case management order. In late November 2015, he finally served discovery requests (ECF No. 10) and defendant served its response in December 2015 (ECF No. 11). In early January 2016, plaintiff was aware of the purported deficiencies in defendant's response to his discovery requests.[2] On January 5, 2016, and February 8, 2016, plaintiff wrote letters to defendant's attorney indicating that he was considering filing a motion to compel. (ECF No. 46-1, PageID.763, 765). However, plaintiff waited until April 24, 2017, to file the motion. (ECF No. 52). Plaintiff's motion to compel was denied because it was patently untimely. Plaintiff did not file a motion seeking an extension of the discovery

---

[2]Among other things, plaintiff was demanding that defendant produce a "copy of Plaintiff's entire Michigan Department of Corrections medical file, including his EMR." (ECF No. 46-1, PageID.754). Defendant's response advised plaintiff that the MDOC's medical file was in the MDOC's possession and that plaintiff could obtain access to his medical records in the manner specified by MDOC's Policy Directive 03.04.108. Further, that if plaintiff was seeking copies of 1800 pages of medical records from the MDOC in Corizon's possession, plaintiff was expected to pay the associated copying costs. (*Id.* at PageID.755) (citing *Johnson v. Hubbard*, 698 F.3d 286 (6th Cir. 1983) and *Smith v. Yarrow*, 78 F. App'x 529 (6th Cir. 2003)). Plaintiff, like all other civil litigants, must pay his own litigation expenses. *See Annabel v. Armstrong*, No. 1:09-cv-796, 2010 WL 2376159, at *1 (W. D. Mich. May 11, 2010). He was not entitled to free copies. *See, e.g., Zimmermann v. Smith*, No. 1:11-cv-568, 2014 WL 320202, at *4 (W.D. Mich. Jan. 29, 2014) (collecting cases). There is no evidence that plaintiff made arrangements to pay for the photocopies or to simply inspect documents as authorized under Rule 34(a)(1). FED. R. CIV. P. 34(a)(1).

deadline. Plaintiff has not filed any affidavit or declaration under Rule 56(d) specifying the discovery he needs in order to be able to respond to defendant's motion for summary judgment. General and conclusory assertions of the need for more discovery do not suffice. *See King v. Harwood*, 852 F.3d 568, 579 (6th Cir. 2017); *Aldridge v. City of Warren*, Nos. 16-1128, 16-1732, __ F. App'x __, 2017 WL 1048075, at *2 (6th Cir. Mar. 20, 2017). I find that plaintiff was not diligent in pursing discovery and that no other factor or combination of factors warrants delaying consideration of defendant's motion for summary judgment or any other relief authorized under Rule 56(d).

## **Proposed Findings of Fact**

The following facts are beyond genuine issue. Plaintiff is in the custody of the Michigan Department of Corrections on criminal convictions. Plaintiff has had a left inguinal hernia since the fall of 2011. (Plf. Aff. ¶ 5, ECF No. 47, PageID.770). "An inguinal hernia occurs in the groin area when tissue pushes through the inguinal canal at the base of the abdomen. For men, the inguinal canal is where the testes descend after birth. Oftentimes, this type of hernia does not cause pain or other symptoms." (Bomber Decl. ¶ 4, ECF No. 43-1, PageID.493). In the absence of severe symptoms, a provider will initially treat an inguinal hernia through reduction. Reducing a hernia means to simply push the protruding tissue back through the weakness in the abdominal cavity. When the hernia is reduced, it typically ceases to be a problem. (Bomber Decl. ¶ 5, PageID.493).

Plaintiff had a "hernia belt" during the 422 days that he spent in the Mason County jail after his arrest. (Plf. Aff. ¶¶ 6-8, PageID.770-71). "There is very little

evidence to show that hernia belts are effective in reducing symptoms of a hernia or improving a patient's ability to function with the hernia. In addition to the lack of utility, there are also risks associated with using a hernia belt. In particular, the use of a hernia belt can cause 'adhesions' between the hernia content and the abdominal wall. These adhesions often increase the patient's pain. Further, a hernia belt can result in compression of bowel material, which could cause complications." (Bomber Decl. ¶ 6, PageID.493).

On April 11, 2013, plaintiff was transferred into the MDOC's custody. (Plf. Aff. ¶ 9, PageID.771). Plaintiff received extensive medical care for his mental health problems and inguinal hernia during the period at issue. (Bomber Decl. ¶¶ 4-41, PageID.493-506; ECF No. 43-2, PageID.507-655). On April 11, 2013, plaintiff was admitted to the MDOC's Duane Waters Hospital from the county jail due to suicidal ideation and hunger strike. (*Id.* at PageID.539). On April 12, 2013, plaintiff had received a psychiatric evaluation and it was determined that plaintiff no longer required one-to-one observation and that it was safe to discharge plaintiff and transfer him back to the MDOC's reception and guidance center (RGC). (ECF No. 43-2, PageID.540). Plaintiff has been a difficult patient to treat because he often refused to be seen by medical providers and went on hunger strikes at the slightest provocation. He appears not to trust what medical providers tell him about his conditions. (Bomber Decl. ¶ 7, PageID.494). Plaintiff insists that his actions were not hunger strikes and states that his hernia gave him problems eating solid foods. (Plf. Aff. ¶¶ 13-17, PageID.771).

Plaintiff states that he had a medical detail for a hernia belt on April 15, 2013, but his belt was confiscated shortly after that date. (Plf. Aff. ¶¶ 11, 12, PageID.771; ECF No. 43-2, PageID.564; ECF No. 46-1, PageID.767). His medical records show that doctors at Duane Waters Health Center conferred and reached a conclusion that plaintiff likely had "an indirect inguinal hernia and as such, would not benefit from a hernia belt[.]" (ECF No. 43-2, PageID.530). The belt could result in compression of bowel material and perhaps cause further complications. Plaintiff was not a surgical candidate for repair of his hernia because it was more of an elective procedure. (*Id.*).

On June 7, 2013, Richard Czop, M.D., saw plaintiff for a hunger strike evaluation. Plaintiff stated that he was not on a hunger strike. He stated that his hernia was causing him pain and it made him vomit. (ECF No. 43-2, PageID.613; ECF No. 46-1, PageID.742). Dr. Czop found that on that date plaintiff was not "hunger striking," but could not eat secondary to pain from his progressing left inguinal hernia. Dr. Czop allowed plaintiff to "lay in for meals." Dr. Czop found that plaintiff's hernia was not strangulated or incarcerated and that he did not have indications to go to the emergency room. (ECF No. 43-2, PageID.614; ECF No. 46-1, PageID.743; Bomber Decl. ¶ 22, PageID.498).

Plaintiff had a hernia belt again in July 2014, and he states that it was confiscated in November 2014. (Plf. Aff. ¶¶ 26-28, PageID.772). On October 3, 2014, Henry Danielsky, M.D., noted plaintiff's "history of using hunger strikes as a means for secondary gain." He also noted that plaintiff was not a candidate for surgical repair of his inguinal hernia. (ECF No. 43-2, PageID.578).

On February 15, 2015, plaintiff was examined by Dr. Larson at Duane Waters Hospital in Jackson, Michigan. Dr. Larson gave a diagnosis of a left inguinal hernia, reducible. He was going to discuss plaintiff's condition with other medical professionals. He noted that plaintiff "may need possible surgery." (ECF No. 43-2, PageID.527-28). On February 24, 2015, plaintiff was examined by Dr. Danielsky. Plaintiff related that his hernia "ha[d] been hurting him more lately." Dr. Danielsky found that plaintiff was walking with a limp and that his hernia was non-reducible. He recommended that plaintiff be scheduled for surgery. Dr. Danielsky's request was approved. (Bomber Decl. ¶ 36, PageID.503; ECF No. 43-2, PageID.564-65). In March 2015, plaintiff received two surgical consultations. (Bomber Decl. ¶ 37, PageID.503; ECF No. 43-2, PageID.555-63). On April 2, 2015, plaintiff's hernia was surgically repaired.

Before Dr. Jentz began the surgery, she had advised plaintiff of the risks, benefits, complications, treatment options and expected outcomes. Specifically, the possibilities of reaction to medication, pulmonary aspiration, perforation of the viscus, bleeding, recurrent infection, the need for additional procedures, and the development of a complication requiring transfusion or further operation were discussed. Plaintiff did not experience surgical complications. (ECF No. 43-2, PageID.508-25, 543-54; Plf. Aff. ¶ 29, PageID.772; Bomber Decl. ¶ 37, PageID.503). The treatment that plaintiff received for his inguinal hernia was medically appropriate. (Bomber Decl. ¶¶ 1-42, ECF No. 43-1, PageID.491-505).

On July 2, 2015, plaintiff filed this lawsuit.

-11-

## Discussion

Corizon is a private corporation. The Sixth Circuit has squarely held that a plaintiff cannot premise the liability of a corporate defendant on the theory of *respondeat superior*. *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (6th Cir.1996). Rather, a plaintiff must plead and prove that his constitutional rights were violated as a result of a policy or custom of the employer, which was the moving force behind the deprivation of rights. *See Savoie v. Martin*, 673 F.3d 488, 493–94 (6th Cir. 2012); *see also Lane v. Wexford Health Sources*, 510 F. App'x 385, 387 (6th Cir. 2013).

Plaintiff's assertions that he should have received surgery before April 2, 2015, and that he should have been allowed a hernia belt at all times during his incarceration before surgery do not suffice at the summary judgment stage of proceedings. I find that plaintiff has not presented evidence of any deficiency in the medical care that he received for his inguinal hernia, much less evidence on which a reasonable trier of fact could find a violation of his Eighth Amendment's Cruel and Unusual Punishments Clause. *See Hearington v. Pandya*, No. 16-1145, __ F. App'x __, 2017 WL 2080273, at *3-4 (6th Cir. May 15, 2017); *see also Hixson v. Tennessee*, No. 14-1087, 2017 WL 1133468, at *7 (W.D. Tenn. Mar. 24, 2017); *Ross v. Dominguez-Bem*, No. 1:15-cv-218, 2017 WL 933237, at *10 (W.D. Mich. Feb. 2, 2017); *Colen v. Corizon Med. Servs.*, No. 14-12948, 2017 WL 389960, at *8 (E.D. Mich. Jan. 25, 2017).

I further find that plaintiff has not presented evidence on which a reasonable trier of fact could find that an Eighth Amendment violation was caused by defendant's policy or custom. *See Street*, 102 F.3d at 818*; see also Parsons v. Caruso*, 491 F. App'x.

597, 609 (6th Cir. 2012); *Simmons v. Rogers*, No. 1:14-cv-1242, 2017 WL 1179376, at *5 (W.D. Mich. Mar. 30, 2017); *Hall v. Pandya*, No. 14-cv-12022, 2015 WL 5212016, at *2-3 (E.D. Mich. Sept. 4, 2015).

### **Recommended Disposition**

For the reasons set forth herein, I recommend that defendant's motion for summary judgment (ECF No. 43) be granted and that judgment be entered in its favor on all plaintiff's claims.

Dated:   June 21, 2017            /s/  Phillip J. Green
                                  United States Magistrate Judge

### **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008). General objections do not suffice. *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).